Loeb *et al. v.* Mathis.

## LOEB ET AL. *v.* MATHIS.

TRESPASS.—*Damages.*—Where a complaint for trespass upon real estate avers a consequential injury to personal property, such averment will be taken only as a matter of aggravation of the damages.

JURISDICTION.—*Statute Construed.*—Section 28 of the code (2 G. & H. 56) is a statute defining jurisdiction, and not venue, and an action for injury to real property must be brought in the county where the real estate is situated.

STARE DECISIS.—*Rule of Construction.*—A long line of uniform decisions construing a statute, in the face of the fact that the legislature for a long series of years has acquiesced in such construction, cannot, with judicial propriety, be disregarded or lightly treated.

JURISDICTION.—If a court has no jurisdiction, there is no trial, and the Supreme Court will not look to the record to see whether the merits of the cause were fairly tried.

SAME.—Under section 54 of the code (2 G. & H. 81), an objection to the jurisdiction of the court over the subject-matter of the action is not waived by failing to demur or answer. (FRAZER, J., dissented.)

SAME.—*Arrest of Judgment.*—Such objection may be raised on a motion in arrest of judgment.

APPEAL From the Montgomery Circuit Court.

GREGORY, J.—Suit by the appellee against the appellants for trespass to real property, situate in Warren county, and so averred in the complaint, commenced in the Fountain circuit court, and transferred to the court below by change of venue. Trial by jury, verdict for the plaintiff, motion in arrest of judgment overruled, and judgment.

The question presented by the motion in arrest, the overruling of which is assigned for error, is this: had the court below jurisdiction of the subject of the action?

The complaint is in one paragraph. It is claimed by the counsel of the appellee that it contains two causes of action, one for the trespass to the land, and the other for an injury to personal property. It is clear to our minds that the injury averred to the personal property is only a matter of aggravation of the damages.

*Barnum* v. *Vandusen*, 16 Conn. 200, is very much in point. That was an action of trespass for breaking and entering the

Loeb *et al. v.* Mathis.

plaintiff's close. An injury very similar to the one in the case in judgment was averred in the complaint.

The learned judge, speaking for the court, says: "But here, the defendant's sheep, while trespassing upon the plaintiff's land, communicate to the plaintiff's sheep a disease of which numbers of them die, and no sufficient justification being shown for the trespass, the question is, whether this communication of disease is such an injury as aggravates the damage occasioned by the trespass, and authorizes the plaintiff to recover damages for the loss of his sheep, as well as for the breach of his close. We think, it is such an injury. Indeed, the rule is believed to be universal, that any consequential damage, resulting from the trespass, and not too remote, may be declared on as matter of aggravation, and if proved, damages may be recovered for it."

It was also held in that case, that it could be shown in evidence to aggravate the damages that the defendant knew that his sheep were diseased.

The code provides, that "actions for the following causes must be commenced in the county in which the subject of the action, or some part thereof, is situated: first, for the recovery of real property, or of an estate or interest therein, or for the determination in any form of such right or interest, and for injuries to real property." Sec. 28, 2 G & H. 56.

Sections 50 and 54 of the code are as follows:

"Section 50. The defendant may demur to the complaint when it appears upon the face thereof, either, first, that the court has no jurisdiction of the person of the defendant, or the subject of the action; or, second, that the plaintiff has not legal capacity to sue; or, third, that there is another action pending between the same parties for the same cause; or, fourth, that there is a defect of parties, plaintiff or defendant; or, fifth, that the complaint does not state facts sufficient to constitute a cause of action; or, sixth, that several causes of action have been improperly united; and for no other cause shall a demurrer be sustained; and, unless

the demurrer shall distinctly specify and number the grounds of objection to the complaint, it shall be overruled."

"Section 54. When any of the matters enumerated in section fifty do not appear on the face of the complaint, the objection (except for misjoinder of causes) may be taken by answer. If no such objection is taken, either by demurrer or answer, the defendant shall be deemed to have waived the same, except only the objection to the jurisdiction of the court over the subject of the action, *and except the objection that the complaint does not state facts sufficient to constitute a cause of action.*" The words in italics were added by amendment in 1855. See Acts of 1855, p. 60.

Does section 28, *supra,* relate only to the venue, or is it jurisdictional?

If it relates only to the venue, it is clear that a demurrer would not lie where the objection appears upon the face of the complaint, and if in such case a demurrer is proper, then it is equally clear that the objection is not waived by a failure to demur or answer. The same words, "the subject of the action," are used in both sections 50 and 54.

It cannot, with any fairness, be said that these words mean one thing in section 50, and another thing in section 54.

It is admitted that there is a difference between a wrong venue and the want of jurisdiction of the subject of the action. The Warren Circuit Court is a different tribunal from the Fountain Circuit Court. It is true that they are both circuit courts, but each exercises an independent jurisdiction. It is certainly in the power of the legislature to confer jurisdiction that shall be exclusive in each. If language can do this, it seems plain that section 28 of the code has done it.

This question has been repeatedly adjudged in this court.

In *Brownfield* v. *Weicht,* 9 Ind. 394, DAVISON, J., speaking for the court, says: "The appellants seek to reverse the judgment upon four grounds; first, it does not appear by the complaint that the land in controversy is situate in Steuben county.

Loeb *et al. v.* Mathis.

"The code says actions for the recovery of real estate, or any interest therein, must be commenced in the county in which the subject of the action, or some part thereof, is situated. 2 R. S. p. 33. Still the pleading in question is unobjectionable, and would have been so held on demurrer, because the circuit court being of general and unlimited jurisdiction, its authority to proceed in the trial of a cause need not affirmatively appear in the complaint. Van Santvoord Pl. 663. The objection for want of jurisdiction, if it exists, may be raised by the answer, or at any subsequent stage of the proceedings. But, in this instance, it did not exist. The record before us sufficiently shows the subject of the action to be located in Steuben county." In *Prichard* v. *Campbell*, 5 Ind. 494, the same learned judge, in speaking for the court, says: "Another objection is raised to these proceedings. No evidence was adduced on the trial tending to prove that the close described in the complaint was within the county of Madison. In that respect the proof was defective. Trespass for breaking and entering a close is a local action. It can only be brought in the county in which the premises are situated. Their locality ought, therefore, to be proved as they are described. 2 Phil. Ev. 136; *Ham* v. *Rogers*, 6 Blackf. 559.

"In *Roach* v. *Damron*, 2 Humph. 425, it was decided that 'the land upon which the trespass is committed must be proved to lay in the county in which the action is brought. This defect in proof will not be cured by verdict.'"

In the case in 2 Humph., referred to by the court, it is expressly said, in speaking of the action (it being an action of trespass, for breaking and entering the plaintiff's close), that, "in its nature, it is a local action, the court of the county in which the land is situated alone having jurisdiction."

In *Parker* v. *McAllister*, 14 Ind. 12, it was held that the objection could be taken by demurrer on the ground that the court had no jurisdiction of the subject of the action.

In *The New Albany and Salem Railroad Co.* . *Huff*, 19 Ind. 444, DAVISON, J. speaking for the court, says: "In

support of the motion in arrest, it is argued that the real estate taken in execution, the title to which is directly involved in this suit, being in Jasper county, the Tippecanoe Circuit Court had no jurisdiction. The code says: 'Actions for the following causes must be commenced in the county in which the subject of the action, or some part thereof, is situated: 1. For the recovery of real property, or of an estate or interest therein, or for the determination in any form of any such right or interest. 2. For the partition of real estate. 3. For the foreclosure of a mortgage of real property.' 2 R. S. p. 33. Does this enactment apply to the case at bar? It is true, as contended, the trust-deed covers lands in Tippecanoe county, belonging to the company; but the title to these lands was not at all in issue, because, as a reason for the levy in Jasper county, it is alleged in the complaint, that the lands in Tippecanoe were so largely incumbered that an execution, issued on plaintiff's judgment, and levied upon them, would have been unavailing. Indeed, the object of the suit was to annul the trust-deed, as to the property levied on, and to render the levy of the plaintiff's execution, on that property, effective. As has been seen, the levy was made in Jasper county, and the question arises, had the court, before which this cause was determined, power to decide upon the title, and direct the sale of lands in that county? This inquiry seems to be fully answered by the statutory enactment to which we have referred: 'Actions for the determination, in any form, of any right or interest in real property, must be commenced in the county in which the subject of the action, or some part thereof, is situated.' The title to the lands levied on by the plaintiff's execution, no part of which are situate in Tippecanoe county, was, plainly, the subject of the present action; hence, the circuit court of that county had no power to adjudicate upon the case made by the record."

In *Vail* v. *Jones*, 31 Ind. 467, there had been a verdict upon an issue formed, and it had been agreed that the jury should find on that issue. The judgment had been arrested

Loeb *et al. v.* Mathis.

in the court below.  The decision of the majority was put on the ground alone that the matter had been set up in a counter claim.  The rulings in *Parker* v. *McAllister*, and *The New Albany and Salem R. R. Co.* v. *Huff, supra,* were recognized as good authority.

The code was passed in 1852.  There has been a long line of unbroken decisions holding that this twenty-eighth section was one of jurisdiction, and not of venue.  In opposition stands the reasoning in *The Indianapolis and Madison Railroad Co.* v. *Solomon,* 23 Ind. 534.  The decision in that case is clearly right, but is put on the wrong ground.  Under the facts, the case is within the ruling in *Brownfield* v. *Weicht, supra.*  The court being one of general jurisdiction, it was not necessary to aver in the complaint that the animals were killed in the county where the suit was commenced, and it turned out in the evidence that they were, in fact, killed within the jurisdiction of the court.  Moreover, under the act of March 4th, 1863 (Acts of 1863, p. 187), it can well be held, that the place where the animals are killed is matter of venue alone, for the reason that the provision was made for the benefit of the owners of animals thus killed, and could, of course, be waived by the persons for whose sole benefit the enactment was made.  This is also true in reference to the divorce law, under which *Lewis* v. *Lewis,* 9 Ind. 105, was decided.

These two classes of cases are transitory in their nature. But as a rule of construction, it is thought that the position, that the fifty-fourth section of the code was only intended to except such want of jurisdiction over the subject-matter of the action as would make the proceedings *coram non judice* and void, is not tenable, for the plain reason that by its very terms it does embrace such want of jurisdiction as may be raised by an answer.  When there is a total want of jurisdiction over the subject-matter of the action, it will appear on the face of the complaint.  For instance, by no possible averments could it be made to appear in a complaint for the recovery of real property, that the common pleas court had jurisdiction of the subject of the action.

But whatever opinion may be entertained of the twenty-eighth section of the code, independent of the adjudged cases, it cannot now as a rule of construction be considered an open question.  A long line of uniform decisions construing a statute, in the face of the fact that the legislature for a long series of years has acquiesced in such construction, cannot, with any judicial propriety, be disregarded or lightly treated.

But it is suggested that this is a technical error, and that it is cured by sections 101 and 580 of the code.  The former provides, that "the court must in every stage of the action disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party, and no judgment can be reversed or affected by reason of such error or defect."  If, then, this error is cured by this section, the provisions of the twenty-eighth section of the code are wholly without effect for any purpose; for it would be the duty of the court to disregard such an error at every stage of the action, as much at its commencement as at its termination.  It will be noticed that all the cases enumerated in section twenty-eight of the code are such as may involve an investigation into the title of real property.  Under our registry laws, deeds and mortgages are required to be recorded in the county in which the lands embraced therein are situate.  It would tend greatly to the security of the substantial rights of defendants, to have the action in that class of cases commenced in the county "in which the subject of the action is situate," where the title could with facility be examined, and where the jury could with convenience examine the premises.  It is true, there is another class of cases in which this right is equally important, and the distinction made at the common law between actions for the breach of covenant in a deed of conveyance of land, and actions for trespass *quare clausum fregit*, is that which is regarded by Chief Justice MARSHALL in *Livingston* v. *Jefferson*, 1 Brock. 203, as technical.  But the substantial rights of defendants in both these classes of cases are recognized by that distinguished

Loeb *et al. v.* Mathis.

jurist.in that case. It may be bad legislation to secure these rights in the one, and deny them in the other class of cases, but this does not change the law. The distinction referred to, contained in a *dictum* of Lord MANSFIELD, between actions *in rem* and those sounding in damages, was expressly over-ruled in England, as shown by Chief Justice MARSHALL in *Livingston* v. *Jefferson, supra.* The case referred to, of *Doulson* v. *Matthews,* 4 Term R. 503, was decided in 1792, and was an action of trespass for entering the plaintiff's dwelling-house in Canada and expelling him. The case in Cowper, containing the *dictum* of Lord MANSFIELD, was cited, but KENYON, C. J., said that the contrary had been held. BULLER, J., said: "It is now too late for us to in-quire whether it were wise or politic to make a distinction between transitory and local actions; it is sufficient for the courts that the law has settled the distinction, and that an action *quare clausum fregit* is local. We may try actions here which are in their nature transitory, though arising out of a transaction abroad, but not such as are in their nature local." The distinction at the common law is between local and transitory actions. That case is cited with approbation in *Ham* v. *Rogers,* 6 Blackf. 559, in which it was held, that the action of trespass *quare clausum fregit* is local, and can be brought only in the county in which the trespass was committed, and that, too, in a case in which the ruling was a denial of justice. That case is in harmony with *Sherry* v. *Winton,* 1 Ind. 96, in which BLACKFORD, J., in speaking for the court, says: "A circuit court is a county court only, whose jurisdiction is limited, generally, by the bounds of the county. It can issue no process, whether mesne or final, to any other county, unless by some special statutory pro-vision."

It was suggested in argument that the affidavit for a change of venue shows that the defendants were not deprived of any substantial rights in not bringing the action in Warren county. It does not follow because there were local preju-dices against the defendants in Warren county, that they lost

no rights by the suit being commenced in Fountain county. It seems that at least they gained nothing, as the same prejudices existed in the latter as in the former county. But it does not follow that a change of venue from the Warren Circuit Court would have resulted in the selection of the forum in which the case was in fact tried; it might have resulted in sending it to some county in which the jury would not (as it is claimed they did in this case) wholly disregard the evidence.

The only part of the five hundred and eightieth section of the code that can have any bearing on this question is this: "Nor shall any judgment be stayed or reversed, in whole or in part, where it shall appear to the court that the merits of the cause have been fairly tried and determined in the court below." If the court below had no jurisdiction, then there was no trial, and we cannot look to the record to see whether the merits of the cause were fairly tried.

The statute of 16 and 17 Charles II., c. 8, is not in force in this State. The statute of 1843 referred to in *Dumont* v. *Lockwood*, 7 Blackf. 576, is this: "For want of a right venue, if the cause was tried by a jury of the right county." It certainly could with no plausibility be contended that this would cure the error of a trial in the wrong county. The venue may be stated wrong, as was done in that case, but this would not prevent the trial in the right county. That was a transitory action commenced in the right county with the statement of a wrong venue. The cases referred to in *Dumont* v. *Lockwood* are *Craft* v. *Boite*, 1 Saund. 241, and *The Mayor of London* v. *Cole*, 7 Term R. 579. The former was for slander, and the latter for breach of covenant in a deed for the conveyance of land, held by LORD KENYON to be transitory, and not local.

If our construction of section fifty-four of the code is right, it follows that this objection was not waived by failing to demur or answer. If, however, we are wrong, then the objection cannot be raised either by demurrer or answer; for if it is not a want of jurisdiction of the subject

of the action, within the meaning of the code, then it is nothing.

It is claimed that in *Newton* v. *Bronson*, 13 N. Y. 587, it was held, that the 123d section of the code of procedure of that state, which is very nearly like the 28th section of our code, only relates to "the place of trial in civil action," and is not jurisdictional. But this is a mistaken view of that case. That was a suit for the specific performance of a contract for the purchase of land lying in the state of Illinois, but the parties were residents of New York. The point ruled was, that in such a case the 123d section of their code did not take from the Court of Chancery its jurisdiction.

DENIO, C. J., in speaking of the 123d section of their code, said: "The latter branch of the statute is vague and indefinite, but the language is comprehensive, and it may perhaps embrace suits for a specific performance of contracts for the sale of lands, where they are situated in this State. It has been so held in the superior court of the city of New York, and I am inclined to assent to the views of that court. *Ring* v. *McCoun*, 3 Sandf. 524." The case referred to was heard before OAKLEY, C. J., and SANDFORD and PAINE, JJ., in 1851, three years after the adoption of the New York code. It was an action to enforce an implied trust in lands. The question arose on a demurrer to the complaint, on the ground that the court had no jurisdiction of the subject of the action. The suit was brought in the city of New York; the lands were situated in the county of Queens.

It was held, that the court in which the action was brought had no jurisdiction. SANDFORD, J., in speaking for the court, said: "To express our idea in a different form, when the subject of the action, not of a transitory nature, is situated in the county of Queens, that fact must govern as to our jurisdiction; although it may be true that the acts which furnish the grounds of the suit were all done in the city of New York, and in that sense the cause of action arose there."

It is suggested that *The N. A. & S. R. R. Co.* v. *Huff* is

in its nature *in rem*, operating on the title to real property, and therefore not in point in the case in judgment. It is expressly held to be embraced in the provisions of the 28th section of the code. If the provision in relation to that class of cases is jurisdictional, then that in relation to actions "for injuries to real property" is also jurisdictional. But that was not an action *in rem*. It was a suit in the nature of a suit in equity by a judgment creditor to set aside a fraudulent deed of conveyance made by the execution defendant, so that the land could be made subject to execution on the plaintiff's judgment. In such a case, the decree is not *in rem*, but *in personam*. See *Gardner* v. *Ogden*, 22 N. Y. 327.

The court below erred in overruling the motion in arrest of judgment.

There are other questions argued by counsel; but as the court below had no jurisdiction of the subject of the action, they do not arise and have not been considered.

Judgment reversed with costs; cause remanded, with directions to sustain the motion in arrest of the judgment.

FRAZER, J. (dissenting). The question is not whether the suit should have been brought in Warren county, *but whether*, after they have appeared and pleaded to the merits in Fountain, obtained a change of the venue to Montgomery, found issues, gone to trial, and been defeated before a jury, the defendants can, for the first time, by motion in arrest, object that the suit should not have been brought in Fountain nor tried in Montgomery? If the law authorizes a party thus to trifle with the courts of general jurisdiction, to submit his cause to their adjudication, occupy their time and attention in hearing it, and then, when beaten upon the merits, to set up that all that has been done is a farce, it is certainly time that the law should be changed.

In *The Indianapolis and Madison R. R. Co.* v. *Solomon*, 23 Ind. 534, we expressly held that such was not the law, and this upon such deliberation as courts of last resort are apt

Loeb *et al. v.* Mathis.

to bestow upon a question before they venture to overrule previous decisions of the same tribunal; as we did with unanimity in that case.   It will not do now to base a judgment, in direct opposition to that case, upon the ground that the question is closed by a long line of uniform decisions and legislative acquiescence therein.   Legislative acquiescence for a period of six years has followed that case and given it whatever of sanction may be derived from the fact.   *Vail* v. *Jones,* 31 Ind. 467, was put upon a ground by the majority of the court which rendered it unnecessary to consider the question now involved, and, on that account, it was not discussed or decided by the majority in that case, and therefore it cannot, as I think, be regarded as an authority upon the question.

If the Solomon case is bad law, it should be overruled, I grant.   The question is one of practice, and with such questions greater liberties may be taken than with rules of property, upon the faith of which men make contracts or acquire titles.   A rule of practice established in error, if found to embarrass the administration of justice, may, with little inconvenience, be corrected.   It is very certain that the rule of the Solomon case would work well and never could be used as a trap to defeat just judgments, or in any way hinder the correct administration of the law.   If the principle of that case is to be disapproved now, it must be, I think, not because it is mischievous but because it is in conflict with the statute.

By our law, suits for divorce are required to be brought in the circuit court of the county in which the petitioner is a a *bona fide* resident.   This requirement is quite as imperative as the 28th section of the code is that any other suit must be brought in the county in which the subject of the action is situated.   And an action *in personam*, to recover damages, is, in its nature, quite as transitory as a suit for divorce, and can be quite as well tried in another county than that in which the statute requires it to be instituted.   And yet in *Lewis* v. *Lewis,* 9 Ind. 105, a divorce case, it was held that, after answer, when the complaint was silent, it was too late to object that the suit was brought in the wrong county,

the fact appearing by the proof. A suit for divorce concerns the *status* of the plaintiff, and the decree operates upon that *status*. This decree was affirmed though the suit was brought and tried in a wrong county. If the 28th section of the code means that jurisdiction of the subject of the action is exclusive in the courts of the county where the suit is directed to be brought, then a divorce case is within the same rule. There can be no good reason for placing such a construction upon one statute and not upon the other. The same remark may, with emphasis, be made of the statute giving an action for killing cattle upon railroads not fenced, to be brought in the county where the damage was done. This latter statute is penal, and therefore subject to strict construction.

Before the code, nothing was better settled than that, in civil cases, advantage could not, after verdict, be taken of the fact that a personal action was brought and tried in a wrong county. *Mayor of London* v. *Cole,* 7 T. R. 579. The English statute of jeofails, 16 and 17 Car. 2, chap. 8, was express that the judgment should not for that cause be arrested or reversed, and we had re-enacted substantially the same statute. R. S. 1843, p. 714. *Dumont* v. *Lockwood,* 7 Blackf. 576. See, also, 1 Smith Lead. Cas. 793, the learned note to *Mostyn* v. *Fabrigas.* It has been supposed that secs. 101 and 580 of the code go far beyond the former statute of jeofails in covering, after a fair trial, errors and defects in legal proceedings, not affecting substantial rights. 1 Van Santvoord Pl. 834. Certainly, the general tenor of our decisions is to that effect. There was formerly, in England, as well as here, in the very nature of things, a substantial and a formal distinction as to the locality of trials, which may yet exist. Where the proceeding is *in rem,* it may sometimes be that the judgment will have no effect if rendered in a wrong county. This was so in England, in ejectment, because the sheriff of the county where the cause was tried was to deliver possession, and this he could not lawfully do outside of his bailiwick. See *Dequindre* v. *Williams,* 31 Ind. 444. So when the question was, in any case, one of title merely, there

Loeb *et al. v.* Mathis.

was a solid distinction of locality. *The New Albany, etc., R. R. Co.* v. *Huff*, was a case of this kind. But in cases like this, for damages merely, the matter was deemed, as long ago as Lord MANSFIELD's time, one of mere form. This distinction, undeniable in its very nature, was plainly stated by that great judge in the leading case of *Mostyn* v. *Fabrigas*, Cowp. 176, and has never been questioned. See also Chit. Pl. 266. It is a mistake to suppose that this distinction was ever questioned in *Doulson* v. *Matthews*, 4 T. R. 503, or by Chief Justice MARSHALL, as will be seen upon examination.

In suits like this, the rule of the common law, that the venue must be laid in the right county, was quite as imperative as our statute is, that the suit must be commenced in the right county, and I suppose for the same reason, that is to say, that the jury to try the cause may come from that county. There can be no other reason. And since it has come to be believed that a jury having no previous knowledge of the matter in controversy, and which must, therefore, rely wholly upon the evidence, is quite as safe as any other jury, and indeed in all respects to be preferred, the fact that the place of trial is merely a formal and technical requirement, in its essential nature, must be very apparent indeed. It was so regarded by MARSHALL, J., in *Livingston* v. *Jefferson*, 1 Brock. 203. It is not to be supposed, without finding a very clear expression of such a purpose, that the legislature intended that a party who had voluntarily, and without objection, submitted his cause to such a jury, might, after a verdict against him, avail himself, for the first time, of this formal requirement. If sections 101 and 580 of the code do not preclude the possibility of such a result in this case where these appellants, in applying for a change of venue from Fountain for the purpose of preventing the cause from being sent to Warren, state under oath that they could not have a fair trial in Warren, because of local prejudice against them, existing there, then I do not comprehend the purpose or meaning of these enactments.

In my judgment the twenty-eighth section of the code

was not intended at all either to define or limit the general jurisdiction of our courts. The code itself was meant, not to declare what should be the] jurisdiction of courts over subjects, but how proceedings should be conducted in them. Its title, as well as its body, shows this. Other acts declare the nature of their jurisdiction and define it. The twenty-eighth and five other sections of the code compose article 3, and this article is entitled, "actions—where commenced." The ordinary import of this language relates to place or venue, and not to jurisdiction; and so of the language of this particular section, and, indeed, of the whole article. It simply requires that the several classes of actions named shall be brought in the counties to which it refers, without a word to indicate that jurisdiction of the subjects respectively is exclusive in the courts of such counties. Nor can this be inferred from the language employed. It makes all actions local, so that no argument whatever can be based upon the former distinction between those local and those transitory. This section of the code is taken, with but a slight alteration, from the New York code, section 123, the change being that the action shall be "commenced," instead of "tried," in the county indicated. The court of appeals of that state, in considering the purport of it, use this language: "The object of the section is to determine the venue in the classes of actions to which it refers, and it does not profess to limit or define the jurisdiction of the court." *Newton* v. *Bronson,* 13 N. Y. 587.

The power to hear and determine a cause is jurisdiction in a legal sense, and it is to my mind very clear that this power, as to a given cause, may be conferred by law upon any circuit court in the State; and yet, at the same time, without inconsistency, it may be required that suits shall be brought only in the county where the subject of the action is situate, or where the cause of action arose, or where the defendant resides; and that the effect of this requirement is, not to deny jurisdiction of the subject to the court of any county, but merely to fix the proper venue.

If this is not so, then jurisdiction and venue are not distinguishable; or rather, to determine the proper venue of the cause by law, means that no court elsewhere has power to hear and determine that cause. Elementary principles would inevitably lead a step further. The court which has no jurisdiction of the subject of the action cannot, it is universally held, render a valid judgment, even by the consent of all the parties, for consent cannot confer jurisdiction of a matter, where the law has denied it.

Jurisdiction of the parties and of the subject must co-exist, in order to enable any court to render a judgment which is not utterly void. The parties may voluntarily submit themselves to a jurisdiction—appearance and a failure to question the right of the court to bind them waives the objection as to the parties—but as to the subject, it is never too late, even after judgment, to urge it. I understand the fifty-fourth section of the code merely to be in harmony with this doctrine. In that sense, it is wise in its provision that the objection that the court has no jurisdiction of the subject shall not be waived by a failure to make it by demurrer or answer. Before that section was amended, in 1855, the objection, that no case was made by the complaint, was waived, unless it was raised by demurrer, for, of course, it could not be by answer, but would always appear, like the want of jurisdiction of the subject, upon the face of the complaint, and it would be senseless to attempt to show it by answer. It is beyond my power of belief that it was ever intended that a failure to object should cure a complaint which failed to show any cause of action, and yet not waive the objection that a meritorious suit was brought in a wrong county. I can readily see, however, that facts not averred, which would make a good case, might be proved upon a trial, and that legislation pre-eminently intended to make traps and pitfalls of no avail in the conduct of a cause, could assume, after verdict, that a good case must have been proved, else the plaintiff would not have succeeded.

It will be seen, upon close examination, that the present question has not, in a single one of the cases relied on by my brethren, been decided. The *N. A. & S. R. R. Co.* v. *Huff*, is the only one of them in which the objection was held good after a verdict otherwise recognized as valid, and I have already distinguished that case from the present, as one in its nature *in rem*, operating upon the title to real estate. *Ring* v. *McCoun*, 3 Sandf. 524, was held to be of the same character. *Gardner* v. *Ogden*, 22 N. Y. 327, was a case where the decree sought would operate directly on the person of the defendant, compelling him to act, and therefore unlike the Huff case, where by its own force the decree would operate upon the title.

It is by inference only, as it seems to me, that the cases referred to, with perhaps a single exception, can be made to support the motion in arrest. This inference is deduced from language employed by the judges, where, I think, words were not well chosen, or not used with exactly legal accuracy, as they would have been if the very question had been in hand. There is a well recognized distinction between jurisdiction over the subject of the action and jurisdiction over the particular cause. The latter may not exist, though the former does, in a given instance. In short, as has been already intimated, the law may require the particular cause to be commenced in a certain county or court, not because the courts elsewhere have no jurisdiction of the subject, but because the legislature is of opinion that it will be more convenient or less expensive to try it in the county or court chosen. *Prigg* v. *Adams*, 2 Salk. 674, is a case where the decision rested upon this distinction. There the judgment (for five shillings) of a court having general jurisdiction of the subject was held valid, the cause arising in Bristol, though the statute required all such causes arising in Bristol under forty shillings to be brought in an inferior court, declaring that the judgment of any other court should be void. The judgment was erroneous, of course, but it would have been void if the effect of the statute had

Loeb *et al. v.* Mathis.

been to deprive the superior court of its general jurisdiction of the subject. This distinction has never been questioned to my knowledge. 1 Smith Lead. Cas. 821. The words, "jurisdiction of the subject," are frequently found in the books, and are used in this general sense, meaning the general power of the court. I cannot bring myself to believe that the legislature, in adopting the same phrase, intended to express a different idea. Thus interpreted, the fifty-fourth section of the code is in harmony with the liberal and enlightened purpose of that act; otherwise, it is a return to the intense technicality of two centuries ago, abandoned in England, and condemned as mischievous everywhere else.

I admit that it would logically follow, from the views already expressed, that the objection could not be raised by demurrer, and that this is not in harmony with *Parker* v. *McAllister*, 14 Ind. 12. It results, however, in no inconvenience or embarrassment that a motion or answer shall be required, the former when the matter appears on the face of the complaint, the latter when it does not. At common law, a demurrer would reach it, for then any objection apparent by the declaration could thus be raised, whereas now the statute authorizes only certain specified questions to be made in that way.

The subject of the action may determine its proper venue without resulting in a denial of the general power of any court elsewhere to try the cause, if objections be not made, as I think has been already shown; and if this be true, it seems clearly to follow that no argument against the construction which I put upon the fifty-fourth section of the code can be founded upon a comparison of the language of that section with that which is employed in the twenty-eighth section.*

*Marshall M. Milford, J. Poole, J. McCabe, J. M. Butler, Monroe M. Milford, R. C. Gregory, J. H. Brown, J. E. McDonald,* and *E. M. McDonald,* for appellants.

*T. F. Davidson,* and *J. Buchanan,* for appellee.

*Opinions filed January 2d, 1871; petition for a rehearing overruled February 2d, 1872.